James E. Cecchi
Kevin G. Cooper
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BOROUGH OF LONGPORT and TOWNSHIP OF IRVINGTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NETFLIX, INC. and HULU, LLC,<br><br>Defendants. | Case No. _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs Borough of Longport and Township of Irvington, individually and on behalf of all others similarly situated (the "Class," as more fully defined below), file this Class Action Complaint against Defendants Netflix, Inc. and Hulu, LLC (collectively "Defendants"), alleging violations of New Jersey's Cable Television Act, N.J. Rev. Stat. § 48:5A-1, *et seq.*, as follows:

1

## I. INTRODUCTION

1. Defendants provide online streaming services, using wireline facilities (*i.e.*, broadband wireline facilities) located at least in part in public rights-of-way. Defendants' services, which offer subscribers a catalog of television shows, movies and other programming, are comparable to that provided by traditional cable companies and television-broadcast stations and are available to customers throughout the state of New Jersey.

2. New Jersey's Cable Television Act, N.J. Rev. Stat. § 48:5A-1, *et seq.* (the "CTA") governs entities that provide "video programming" and "cable television service" to subscribers and the CTA imposes certain franchise and fee obligations on these entities.

3. Under the CTA, Defendants qualify as providers of "video programming" and "cable television service" and are thus required to pay New Jersey municipalities franchise fees equivalent to a percentage of their gross revenue, derived in each municipality.

4. Defendants, however, have failed to pay the required fee, necessitating this lawsuit, and entitling Plaintiffs and the putative class to the relief requested herein.

## II. PARTIES

5. Plaintiff Borough of Longport is a lawfully existing New Jersey

municipality located in Atlantic County, New Jersey.

6. Plaintiff Township of Irvington is a lawfully existing New Jersey municipality located in Essex County, New Jersey.

7. Defendant Netflix, Inc. ("Netflix") is a Delaware corporation, headquartered in Los Gatos, California. Netflix owns and operates the video streaming service of the same name. Netflix does business in Longport, New Jersey and Irvington, New Jersey and has done so at all times relevant to this action.

8. Defendant Hulu, LLC ("Hulu") is a Delaware limited liability company, headquartered in Santa Monica, California. Hulu owns and operates the video streaming service of the same name. Hulu is currently owned jointly by The Walt Disney Company and Comcast Corporation. Hulu does business in Longport, New Jersey and Irvington, New Jersey and has done so at all times relevant to this action.

## III.   JURISDICTION AND VENUE

9. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Defendants are citizens of a state different from that of Plaintiffs, the putative class size is greater than 100, and the aggregate amount in controversy for the proposed Class exceeds $5,000,000.00, exclusive of interest and costs.

10. Venue is proper in this District, and this Court has personal jurisdiction

over Defendants, pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in this District, and because Defendants "transact affairs" in this District; each Defendant continuously and systematically engaged in and continues to engage in business in this District.

## IV.   FACTUAL ALLEGATIONS

### A.   Defendants' Video Streaming Businesses

11.   Netflix is the world's leading subscription entertainment service, offering paid streaming memberships around the world to view "TV series, documentaries and feature films across a wide variety of genres and languages." Netflix's streaming service allows "[m]embers [to] watch as much as they want, anytime, anywhere, on any internet-connected screen. Members can play, pause and resume watching, all without commercials."[1]

12.   Netflix describes itself as "a pioneer in the delivery of streaming entertainment, launching our streaming service in 2007. Since this launch, we have developed an ecosystem for internet-connected screens and have added increasing amounts of content that enable consumers to enjoy entertainment directly on their internet-connected screens. As a result of these efforts, we have experienced growing consumer acceptance of, and interest in, the delivery of streaming

---

[1] Netflix, Inc., *2019 Annual Report*, at 1 (2020).

entertainment."[2]

13. Netflix's streaming memberships exceed 200 million in number worldwide.[3]

14. "Hulu aggregates acquired and original television and film entertainment content for distribution to internet-connected devices. Hulu offers a subscription-based service with limited commercial announcements and a subscription-based service with no commercial announcements. In addition, Hulu operates a digital OTT MVPD service, which offers linear streams of broadcast and cable channels, including the major broadcast networks."[4] Hulu has subscribers in excess of 39 million.[5]

### B. New Jersey's Cable Television Act

15. New Jersey's Cable Television Act, N.J. Rev. Stat. § 48:5A-1, *et seq.* (the "CTA"), governs the providers of "cable television service" or "CATV" which are defined as:

> (1) the one-way transmission to subscribers of (a) video programming, or (b) other programming service; and (2) subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service, regardless of the technology utilized by a cable

---

[2] *Id.*

[3] Netflix, Inc., *2020 Earnings Call Transcript*, at 7 (Tuesday, January 19, 2021).

[4] The Walt Disney Company, *2019 Annual Report*, at 16 (2020).

[5] The Walt Disney Company, *2021 First Quarter Earnings Report*, at 5 (February 11, 2021).

5

television company to enable such selection or use.[6]

16. "Video programming" is further defined in the CTA as "programming provided by, or generally considered comparable to programming provided by, a television broadcast station."[7]

17. The CTA further notes that "cable television service" includes "video programming, without regard to the technology used to deliver such video programming, including Internet protocol technology …"[8]

18. Two primary requirements under the CTA are at issue here.

19. First, the CTA requires that "[a]ny entity that seeks to provide cable service in this State [] may apply for either individual certificates[9] of approval [with municipal consents] or a system-wide franchise"[10] with the New Jersey Board of

---

[6] N.J. Stat. Ann. § 48:5A-3.

[7] *Id.*

[8] "'Cable television system', 'CATV system' or 'cable system' means a facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment, that is designed to provide cable television service which includes video programming, without regard to the technology used to deliver such video programming, including Internet protocol technology or any successor technology, and which is provided to multiple subscribers within a community, but such term does not include: (1) a facility that serves only to retransmit the television signals of one or more television broadcast stations; (2) a facility that serves subscribers without using any public right-of-way …" *Id.*

[9] N.J. Stat. Ann. § 48:5A-3 ("'Certificate' means a certificate of approval issued by the [Board of Public Utilities]").

[10] *See id.* ("'Franchise' means an initial authorization, or renewal thereof, issued by a franchising authority … which authorizes the construction or operation of a cable

6

Public Utilities.[11]

20. Second, the CTA imposes an obligation to pay fees to municipalities based on a percentage of their subscription fees:

> a. … in consideration of a municipal consent … the CATV company to which the municipal consent is issued shall annually pay to each municipality served by the CATV company … a sum equal to two percent of the gross revenues from all recurring charges in the nature of subscription fees paid by subscribers to its cable television reception service in such municipality.
>
> d. In consideration of a system-wide franchise … such CATV company shall pay … (1) to such municipality served by the CATV company … a sum equal to three and one half percent of the gross revenues … that the company derives during the calendar year from cable television service charges or fees paid by subscribers in the municipality to the company[12]

### C. Defendants' Video Streaming Services Fall within New Jersey's Cable Television Act

21. Defendants provide "video programming" and "cable television service" to their subscribers to view television shows, movies, and other programming.[13] In doing so, Defendants compete with other providers offering video programming such as that provided by traditional cable companies and television-broadcast stations.

---

television system.").

[11] N.J. Stat. Ann. § 48:5A-16.

[12] N.J. Stat. Ann. § 48:5A-30.

[13] N.J. Stat. Ann. § 48:5A-3.

22. Customers view Defendants' video programming—such as television shows and movies—using an Internet-connected device. Internet-connected devices are electronic devices that have software enabling them to stream Defendants' video programming, including smart televisions, streaming media players like Roku or Apple TV, smartphones, tablets, video game consoles, set-top boxes from cable and satellite providers, Blu-ray players, and personal computers.

23. When a subscriber wants to watch Netflix or Hulu, that subscriber uses an Internet-connected device to send a request to the Internet-service provider. The Internet-service provider then forwards that request to Defendants' dedicated Internet servers, which, in turn, provide a response. This response is then relayed back to the subscriber's device, and Defendants' deliver the video programming via Internet protocol technology (*i.e.*, broadband wireline facilities located at least in part in public rights-of-way).

24. Netflix uses a content delivery network called Netflix Open Connect to deliver its video programming to subscribers:

> The goal of the Netflix Open Connect program is to provide our millions of Netflix subscribers the highest-quality viewing experience possible. We achieve this goal by partnering with Internet Service Providers (ISPs) to deliver our content more efficiently. We partner with over a thousand ISPs to localize substantial amounts of traffic with Open Connect Appliance embedded deployments, and we have an open peering policy at our interconnection locations.[14]

---

[14] https://openconnect.netflix.com/en/#what-is-open-connect

25. Thus, when a subscriber wants to view Netflix's video programming, the subscriber's Internet Service Provider will connect the subscriber to the closest Netflix Open Connect server offering the fastest speeds and best video quality. That means that most of its subscribers receive Netflix's video programming from servers either inside of, or directly connected to, the subscriber's Internet Service Provider's network within their local region.

26. Netflix also provides hardware in the form of Open Connect Appliances (OCAs) to ISP partners "to help ISPs most efficiently deliver high-quality Netflix traffic with a focus on localization."[15]

27. Similar to Netflix, when a subscriber of Hulu wants to view their video programming, the subscriber's Internet Service Provider will connect the subscriber to the Hulu server. Hulu receives the directive and checks the subscriber's entitlement, the location, and the content availability. It then delivers the program through the Internet to the subscriber's Internet-connected device.

28. Defendants' subscribers typically use a broadband Internet connection, such as DSL or fiber optic cable to receive Defendants' programming. In the Borough of Longport and Township of Irvington, common providers include Comcast of South Jersey, Comcast of New Jersey and Verizon of New Jersey. These broadband

---

[15] https://openconnect.netflix.com/en/appliances/#overview

9

Internet connections rely upon wireline facilities located in whole or in part in the public right(s)-of-way to deliver Internet service to subscribers. That means that Defendants operate and provide their video programming to Defendants' subscribers through wireline facilities located at least in part in the public right-of-way.

29. As providers of video programming and cable television service, Defendants were required to file an application for "individual certificates of approval or a system-wide franchise[.]" *See* N.J. Stat. Ann. § 48:5A-16.

30. Defendants failed to apply for and obtain certificates of approval and municipal consents and/or a system-wide franchise. Defendants therefore are providing cable television service throughout New Jersey without authorization, and in contravention of the CTA.

31. Such certificates of approval and/or franchise would have authorized Defendants to use public rights-of-way to provide their cable television service and video programming, provided that Defendants make payments to each municipality in which it provides service. The required payment is equal to a percentage of the gross revenues derived from subscription fees paid by subscribers in each municipality. *See* N.J. Stat. Ann. § 48:5A-30.

32. Defendants were required to obtain certificates of approval and municipal consents and/or a system-wide franchise before providing cable television service and video programming in the Borough of Longport and Township of Irvington,

and the other New Jersey municipalities.

33. Defendants' failure to obtain such approval and/or franchise, however, did not relieve Defendants of the obligation to pay fees based on a percentage of their gross revenues,[16] derived from subscription fees paid by subscribers in each municipality. *See* N.J. Stat. Ann. § 48:5A-30.

34. Defendants have failed to comply with N.J. Stat. Ann. § 48:5A-30 because they have failed to pay Plaintiffs and the other Class members the required fees.

35. Plaintiffs Borough of Longport and Township of Irvington, individually and on behalf of other New Jersey municipalities, seek to require Defendants to abide by the CTA, and pay what they owe to these municipalities.

## V.  CLASS ACTION ALLEGATIONS

36. Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class defined as:

---

[16] N.J. Stat. Ann. § 48:5A-3 ("'Gross revenues' means all revenues actually received by the holder of a system-wide franchise or certificate of approval derived during the calendar year from all the charges or fees paid by subscribers in the municipality to the CATV company for providing basic cable service, cable programming service, as that term is defined in 47 C.F.R. s.76.901, and premier tier programming service, for pay-per-view events, seasonal or sporting events of limited duration, and for all similar programming or channels …").

>All New Jersey municipalities in which one or more of the Defendants has provided video service (the "Class").

37. Excluded from the Class are Defendants, their officers and directors, management, employees, subsidiaries, or affiliates. The Class also excludes governmental entities and judicial officers who have any role in adjudicating this matter.

38. The Class is so numerous that joinder of the individual members of the proposed Classes is impracticable. Plaintiffs believe that the Class includes hundreds of municipalities in New Jersey.

39. Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and each of the other Class members are entitled to franchise fee payments from Defendants pursuant to N.J. Stat. Ann. § 48:5A-30, and Defendants have failed to pay Plaintiffs and each of the other Class members those franchise fees. Plaintiffs are asserting the same claims and legal theories individually and on behalf of the other Class members.

40. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs are adequate representatives of the Class and have no interests that are adverse to the interests of absent members of the Class.

41. Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent class member. Plaintiffs will undertake to represent and protect the interests of absent members within the Class and will vigorously prosecute this

action.

42. Plaintiffs have engaged the services of the undersigned counsel. Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Class.

43. Common questions of law or fact exist as to Plaintiffs and all members of the Class, and these common questions predominate over any questions affecting only individual members of the Class. These predominant questions of law and/or fact common to the Class include, without limitation:

   a. Whether Defendants provide "cable television service" and "video programming," as defined by N.J. Stat. Ann. § 48:5A-3, within Plaintiff's and the other Class members' geographic areas;

   b. Whether Defendants were required to apply for an "individual certificates of approval" or "system-wide franchise," pursuant to N.J. Stat. Ann. § 48:5A-16;

   c. Whether Defendants were required to pay fees pursuant to N.J. Stat. Ann. § 48:5A-30;

   d. Whether Defendants have failed to pay the requisite fees pursuant to N.J. Stat. Ann. § 48:5A-30;

   e. The appropriate measure of damages to award Plaintiffs and the other Class members; and

   f. The appropriate declaratory relief to which Plaintiffs and the other Class members are entitled.

44. A class action is superior to other methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is

impracticable. Treatment as a class action will permit a "large number" of similarly situated municipalities to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants. The cost to the court system of adjudication of such individualized litigation would be substantial.

45. Class action status is warranted under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Class, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Class.

46. The Class may also be certified under Rule 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

47. The interest of members within the Class in individually controlling the prosecution of separate actions is theoretical and not practical. The Class have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

48. The nature of notice to the proposed Class is contemplated to be by direct mail upon certification of the Class, or if such notice is not practicable, by the best notice practicable under the circumstance including, *inter alia*, email, publication in major newspapers and/or the internet.

## VI. LEGAL CLAIMS

### COUNT I
### VIOLATION OF THE NEW JERSEY
### CABLE TELEVISION ACT § 48.5A-1, *et seq.*

49. Plaintiffs re-allege and incorporate by reference the preceding paragraphs, as if fully set forth herein.

50. Defendants provide video programming, and are providers of cable television service, in Longport, New Jersey and Irvington, New Jersey and each municipality comprising the Class. Defendants derive gross revenues from providing these services. *See* N.J. Stat. Ann. § 48:5A-3.

51. Defendants are thus required, by statute, to pay each municipality in which they provide video programming and cable television service, a franchise fee based on a percentage of their gross revenues derived from their operations in that municipality. *See* N.J. Stat. Ann. § 48:5A-30.

52. Defendants' failure to obtain the required approval and/or franchise authority does not excuse their obligation to make these payments.

53. Defendants have failed to comply with N.J. Stat. Ann. § 48:5A-30

because they have failed to pay Plaintiffs and the other Class members the required percentage of gross revenues.

54. Plaintiffs and the other Class members are, therefore, entitled to damages as a result of Defendants' violations of N.J. Stat. Ann. § 48:5A-30, along with pre- and post-judgment interest, in an amount to be determined at trial.

## COUNT II
## DECLARATORY JUDGMENT ACT

55. Plaintiffs re-allege and incorporate by reference the preceding paragraphs, as if fully set forth herein.

56. This case involves an actual controversy of sufficient immediacy, which is substantial and concrete, touches upon the legal relations of parties with adverse interests, and is subject to specific relief through a decree of conclusive character.

57. Pursuant to 28 U.S.C. §§ 2201-2202, Plaintiffs seek a declaration, and resulting order, from the Court that:

    a. Each Defendant provides "cable television service" and "video programming," as defined by N.J. Stat. Ann. § 48:5A-3;

    b. Each Defendant provides "cable television service" and "video programming" in Longport, New Jersey and Irvington, New Jersey and each municipality in the Class. *See* N.J. Stat. Ann. § 48:5A-3;

    c. Defendants were required to apply for "individual certificates of approval" or a "system-wide franchise," pursuant to N.J. Stat. Ann. § 48:5A-16;

  d. Defendants are required to pay Plaintiffs and each of the other Class members a fee based on a percentage of their gross revenues derived from subscription fees received from subscribers in each municipality, pursuant to N.J. Stat. Ann. § 48:5A-30; and

  e. Defendants have failed to comply with N.J. Stat. Ann. § 48:5A-30, because they have each failed to pay to Plaintiffs and each of the other Class members the percentage of gross revenues.

## VII. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

  a. Enter an Order certifying the above-defined Class and designating Plaintiffs as Class Representatives, and Plaintiffs' counsel as Class Counsel;

  b. Award all monetary relief to which Plaintiffs and the other Class members are entitled, including as set forth in Count I above;

  c. Grant declaratory relief as set forth in Count II above, including ordering Defendants to cure their noncompliance with N.J. Stat. Ann. § 48:5A-16 and N.J. Stat. Ann. § 48:5A-30;

  d. Award pre- and post-judgment interest;

  e. Award reasonable attorneys' fees and costs to Plaintiffs' counsel; and

  f. Grant such further and other relief as this Court deems appropriate.

Dated: August 13, 2021

                    /s/James E. Cecchi\_\_\_\_
                    James E. Cecchi
                    Kevin G. Cooper
                    **CARELLA, BYRNE, CECCHI,**
                    **OLSTEIN, BRODY & AGNELLO,**

**P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

Joseph H. Meltzer
Darren Check
Melissa Troutner
Ethan J. Barlieb
Lauren M. McGinley
**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
280 King of Prussia Road
 Radnor, PA 19087
Telephone: (610) 667-7706
jmeltzer@ktmc.com
dcheck@ktmc.com
mtroutner@ktmc.com
ebarlieb@ktmc.com
lmcginley@ktmc.com