NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOROUGH OF LONGPORT and TOWNSHIP OF IRVINGTON<br><br>           Plaintiffs,<br><br>v.<br><br>NETFLIX, INC. and HULU, LLC,<br><br>           Defendants. | Civil Action No. 21-15303 (SRC) (MAH)<br><br>**OPINION** |

**CHESLER**, District Judge

    This matter comes before the Court on the motions to dismiss respectively filed by Defendants Netflix, Inc. ("Netflix") and Hulu, LLC ("Hulu, and collectively, "Defendants") as to the class action complaint filed against them by Plaintiffs Borough of Longport and Township of Irvington ("Plaintiffs") on behalf of a putative class of New Jersey municipalities in which either Defendant has provided video service. Plaintiffs oppose the motion. The Court has reviewed the papers submitted and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Defendants' motions will be granted.

    I.    **BACKGROUND**

    In 1972, the New Jersey legislature enacted the Cable Television Act to among other things, promote the development of cable television service, ensure the fair distribution of that service, and "to protect the interests of the several municipalities of this State in relation to the issuance of municipal consents for the operation of cable television companies within their several

jurisdictions, and to secure a desirable degree of uniformity in the practices and operations of cable television companies in those several jurisdictions." New Jersey Statutes Annotated ("N.J.S.A.") § 48:5A-1, *et seq*. (the "CTA"). Pursuant to the CTA, the Legislature created a regulatory framework by which cable television companies were obligated to obtain a municipality's consent to operate within the municipality's borders, but the ultimate decision of whether to franchise the cable television company was vested with the Board of Public Utilities (the "BPU"). *Id.* § 48:5A-15; 48:5A-22.

In 2006, the New Jersey Legislature amended the CTA and instituted a framework by which a cable television company could, as an alternative to the requirement that the company seek consent from municipalities on an individual basis, obtain a "system-wide franchise" from the BPU. *Id.* § 48:5A-16. A "system-wide franchise" authorizes "a [cable television] company to construct or operate a cable television system in any location within [New Jersey] in which the [cable television] company, at the time of the issuance of the system-wide franchise, either has plant or equipment in use for the provision of any consumer video, cable or telecommunications service, including telephone service, or has proposed to place such plant or equipment into use to provide such service." *Id.* § 48:5A-3(r). Cable television companies are required to make annual franchise payments in each municipality in which they own or operate cable systems and provide cable services in the amount of two percent of the on gross revenues received from the provision of cable services in that municipality. *Id.* § 48:5A-30(a)–(d).

## II. DISCUSSION

Defendants offer up numerous independent bases by which to dismiss the Complaint, including that: (i) the CTA does not grant Plaintiffs a private right of enforcement; (ii) the CTA does not extend to Defendants' services; (iii) the imposition on Defendants of fees such as those

2

provided by the CTA is preempted under federal law; (iv) the application of the CTA to Defendants would violate the Internet Tax Freedom Act; (v) the application of the CTA to Defendants would violate their First Amendment rights; and (vi) even if the Complaint stated a claim for relief, the primary jurisdiction doctrine makes it inappropriate for the Court to render a decision in the first instance. Because the Court finds that Plaintiffs do not have a private right of action against Defendants, it declines to consider Defendants' other arguments.

### A. LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must apply the standard of review articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*. Under this standard, a complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint states a plausible claim if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### B. PLAINTIFFS DO NOT HAVE A PRIVATE RIGHT OF ACTION

A plaintiff cannot bring claims to enforce a statute if it does not have a private right of action. *See Matter of State Comm. of Investigation*, 527 A.2d 851, 853–54 (N.J. 1987). Where a statute fails to include an express private right of action, a Court may consider whether the statute provides an implied one. *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001). The New Jersey Supreme Court has adopted the factors set forth by the United States Supreme Court in determining whether a statute confers an implied private right of action, including whether:

> (1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy.

*Id.* (citing *Cort v. Ash*, 422 U.S. 66 (1975)). "Although courts give varying weight to each one of those factors, 'the primary goal has almost invariably been a search for the underlying legislative intent.'" *Id.* at 1142–43.

The Court is mindful of two additional, but competing, imperatives when considering these factors. First, the New Jersey Constitution bestows upon municipalities broad leeway to enforce laws affecting their interests. Article IV of the New Jersey Constitution states:

> The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor. The powers of counties and such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law.

N.J. Const. art. IV § 7, ¶ 11. Meanwhile, "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." *Castro v. NYT Television*, 851 A.2d 88, 93 (N.J. Super. Ct. App. Div. 2004) (citing *R.J. Gaydos*, 773 A.2d at 1142).

The CTA does not explicitly confer a private right of action to State municipalities, and thus the Court must consider whether such a right is implicit within the statutory scheme. Looking to the first *Cort* factor, municipalities are plainly members of the class for whose special benefit was enacted. Indeed, Defendants do not contest otherwise. The CTA was enacted to, among other things, "protect the interests of the several municipalities of this State in relation to the issuance of municipal consents for the operation of cable television companies within their several jurisdictions . . . ." N.J.S.A § 48:5A-2(c). This special benefit is further evidenced by the financial

4

benefits which the CTA bestows upon municipalities. *Id.* § 48:5A-30 (the CTA "imposes an obligation to pay fees to municipalities."); *cf. Sutter v. Horizon Blue Cross/Blue Shield of NJ*, 2003 WL 27381731, at *5 (N.J. Super. L. Feb. 13, 2003) (finding private right of action where doctor sought to enforce statute requiring prompt payment to medical service providers).

      Notwithstanding this special benefit, the statutory framework governing the CTA demonstrates the Legislature's clear intent to designate the BPU, as the State's local franchising authority, as the sole authority empowered to "authorize[] the construction or operation of a cable television system." N.J.S.A. § 48:5A-3(q), (s); *id.* § 48:5A-9(a). The CTA furthers vests with the BPU the "full right, power, authority and jurisdiction" to, among other things, "receive or initiate complaints of the alleged violation of any of the provisions of [the CTA] . . . or of the terms and conditions of any municipal consent or franchise granted pursuant to [the CTA];" "supervise and regulate every [cable television] company operating within this State and its . . . facilities . . . and franchises so far as may be necessary to carry out the purposes of [the CTA];" "[i]nstitute all proceedings and investigations, hear all complaints, issue all process and orders, and render all decisions necessary to enforce the provisions;" and "[i]nstitute, or intervene as a party in, any action in any court of competent jurisdiction seeking mandamus, injunctive or other relief to compel compliance with any provision." *See id.* § 48:5A-9(a)–(d). This expansive authority is intended to, among other things, "secure a desirable degree of uniformity in the practices and operations of cable television companies" across the State's municipalities. *Id.* § 48:5A-2. The provision of the BPU's plenary authority coupled with an expressed desire to ensure uniformity and consistency in the application the CTA's provisions across cable television companies demonstrates the Legislature's intent to delegate all enforcement authority under the statute to the BPU. *See Marshall v. Verde Energy USA, Inc.*, 2020 WL 5905072, at *6 (D.N.J. Oct. 5, 2020)

(refusing to find an implied private right of action in Electric Discount and Energy Competition Act where the legislature granted BPU expansive authority to address violations thereof); *cf. R.J. Gaydos*, 773 A.2d at 1142–45 (2001) (finding that an insurance agent did not have an implied private action under the Fair Automobile Insurance Reform Act given the comprehensive enforcement scheme outlined in the statute and which vests enforcement powers with the Commissioner of the Department of Banking and Insurance).

Furthermore, a private right of action for municipalities is not, as Plaintiffs would have it, "essential, necessary, or incident" to the statute, and rather than furthering the underlying purposes of the legislative scheme, finding such a private right would interfere with the enforcement scheme which the Legislature established. Where a statute's legislative scheme provides mechanisms for enforcement, a plaintiffs' need for a private cause of action is "obviate[d]." *Matter of State Comm'n of Investigation*, 527 A.2d 851, 855 (N. J. 1987); *see Castro*, 851 A.2d at 95 (courts are "especially hesitant in implying a private cause of action against an entity that is subject to such pervasive regulation by a State agency"); *Campione v. Adamar of New Jersey, Inc.*, 155 N.J. 245, 266 (1998) ("Given the elaborate regulatory scheme, we likewise decline to imply a cause of action when no such cause of action exists at common law.") This is especially true where an express aim of the statutory scheme is to ensure uniformity in the application of the scheme. *See New Jersey State League of Master Plumbers, Inc. v. New Jersey Nat. Gas Co.*, 2010 WL 3720301, at *5 (N.J. Super. Ct. App. Div. Sept. 24, 2010) (finding a private cause of action inconsistent with the regulatory scheme provided by the Uniform Enforcement Act where the statute placed enforcement powers with the Attorney General and was designed to establish a "uniform" approach to investigation and enforcement).

Here, permitting the municipalities to seek redress where it is not otherwise provided by statute would usurp the BPU's exclusive and sole authority as the State's local franchising authority. N.J.S.A. § 48:5A-3(q), (s); *id.* § 48:5A-9(a). An implied private right of action also is demonstrably superfluous to the successful enforcement of the CTA's franchising requirements: The BPU has shown a willingness and ability to investigate cable television companies which have failed to receive the appropriate approvals and held them to task. *See, e.g.*, *In re RCN of N.Y.*, 892 A.2d 636 (N.J. 2006) (affirming BPU order which directed RCN to seek municipal consent and a certificate of approval from the BPU for the operation of a cable television system over RCN's objections that it did not operate a cable TV system).

To paraphrase *R.J. Gaydos*:

> It is within the Legislature's police power to govern the [cable TV] industry and promote what is in the public's interest. To allow [Plaintiffs] to bypass [the CTA's] statutory and regulatory schemes and litigate alleged [CTA] violations in the judicial system without the [BPU's] participation could undermine the State's ability to properly regulate the . . . industry.

773 A.2d at 1148. In considering these factors collectively, and with the "primary goal" of discerning the underlying legislative intent, the Court finds that Plaintiffs do not have an implied private right of action under the CTA. Accordingly, their claims must fail for this reason alone.

### III.  CONCLUSION

For the reasons set forth above, Defendants' motions will be granted. Because Plaintiffs do not have a private right of action, any amendment to the Complaint would be futile and leave to amend is denied. *See Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004). An appropriate Order will issue.

/s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: May 20, 2022